UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADVENT TECHNOLOGIES, INC., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:23-cv-11246-IT |
| | * |
| IAN KAYE and RU CHEN, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

April 29, 2024

TALWANI, D.J.

Plaintiff Advent Technologies, Inc. ("Advent Inc.") alleges that its former employees, Defendants Ian Kaye and Run Chen, improperly utilized Advent Inc.'s confidential information and trade secrets to create a competitor entity before resigning from Advent Inc. Advent Inc. seeks damages and injunctive relief. Pending before the court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 23]. For the following reasons, Defendants' Motion is GRANTED.

I.   **Background**

  *A.   Brief Overview of the Complaint*

Advent Inc., a corporation that specializes in fuel cell and hydrogen technology, alleges that it employed Defendants Ian Kaye and Ru Chen and that while so employed, Kaye and Chen worked extensively on developing the "Honey Badger" project, a compact, wearable fuel cell system designed for use in off-grid field operations, such as military and rescue operations. Complaint ("Compl.") ¶¶ 7, 11, 14–16 [Doc. No. 1-1]. Advent Inc. alleges further that despite Defendants' agreements to be bound by confidentiality and proprietary information policies,

Defendants misappropriated Advent Inc.'s confidential information while still employed by Advent Inc. and formed a new business, MV Defense, LLC ("MV Defense"). Id. ¶¶ 32–46. Advent Inc. alleges further that since Defendants resigned in April 2023, they have continued to misappropriate Advent Inc.'s trade secrets. See id. ¶¶ 3, 42–52.

Advent Inc. brings claims for Breach of Contract (Count I) against Kaye based on Kaye's offer letter and an Employee Handbook and against Chen based on Chen's offer letter and an Employee Proprietary Information and Inventions Assignment Agreement, where Defendants allegedly breached by misappropriating Advent Inc.'s confidential information, refusing to return the information, and working for a competitor; Conversion (Count II) against both Defendants based on their exercise of ownership rights over Advent Inc.'s property, including pictures of Advent Inc.'s Honey Badger technology; Breach of Fiduciary Duty (Count III) against both Defendants based on breach of fiduciary duties owed as key employees and senior leaders at Advent Inc.; Misappropriation of Trade Secrets under Mass. G.L. c. 93 sec. 42 (Count IV) against both Defendants for misappropriating Advent Inc.'s confidential information, including trade secrets pertaining to Honey Badger; and Tortious Interference with Contractual Relationship (Count V) against Kaye alone based on his efforts to poach work relating to Advent Inc.'s Honey Badger project and direct that work to MV Defense. Id. ¶¶ 56–86.

B.   Factual Record Relevant to Jurisdiction

1. Plaintiff Advent Inc.

Plaintiff Advent Inc. was at one time headquartered in Boston, Massachusetts, and continues to have a dedicated office in Massachusetts. De Castro Decl. ¶ 3 [Doc. No. 27-1]. Many of its key officers and employees are located in Massachusetts, including its Chief Financial Officer, Chief Operations Officer, and General Counsel; its Chief Executive Officer spends several months per year working in Massachusetts. Id. Advent Inc. is wholly owned by

Advent Technologies Holdings, Inc. ("Advent Holdings"). Rule 7.1 Corporate Disclosure Statement [Doc. No. 10]. Advent Holdings is a Delaware Corporation. Chen Decl., Ex. B [Doc. No. 24-2].

    2. Defendants' Residence and Employment in California and Advent Holding's Purchase of the Company that Employed Them

Prior to working for any Advent-related company, Defendants lived in California and were employed there by UltraCell, LLC ("UltraCell" or, after a name change described below, "the LLC"), a company with a principal place of business in Livermore, California. Kaye Decl. ¶ 2 [Doc. No. 24-1]; Chen Decl. ¶ 2 [Doc. No. 24-2].

In February 2021, Advent Holdings acquired UltraCell from Bren-Tronics, Inc. Def. Mem. ISO MTD, Ex. 1, at 5 (press release) [Doc. No. 24-1]; but see De Castro Decl. ¶ 30.a. [Doc. No. 27-1] (stating that "Advent" purchased UltraCell in February 2021, where "Advent" refers to "Advent Technologies, Inc."). At the time of the purchase, Kaye was UltraCell's General Manager. Kaye 2d Decl. ¶ 5 [Doc. No. 30-1]. UltraCell continued as a limited liability company under the UltraCell, LLC name until September 2021.

    3. The LLC Changes its Name and Continues California Operations

In September 2021, UltraCell changed its name to Advent Technologies, LLC. Kaye Decl. ¶ 4 [Doc. No. 24-1]. The LLC's principal place of business remained in Livermore, California. See Kaye 2d Decl. ¶ 14 [Doc. No. 30-1].

Defendants remained employed by and paid by the LLC both before and after the name change. Kaye Decl. ¶ 4 [Doc. No. 24-1]; Chen Decl. ¶ 4 [Doc. No. 24-2].[1]

---

[1] Defendants contend that their paychecks continued to identify UltraCell, LLC, as their employer, and have each provided an ADP earning statement for a pay period ending prior to the date of their resignation. Kaye Decl. ¶ 4 [Doc. No. 24-1]; Kaye 2d Decl, Ex. 2 [Doc. No. 30-1]; Chen Decl. ¶ 4 [Doc. No. 24-2]; Chen 2d. Decl., Ex. 2 [Doc. No. 30-2]. In light of the undisputed

> 4. Defendants Receive Offer Letters and Advent Inc.'s Employee Handbook and Chen Signs a Further Agreement

On October 14, 2021, Chen was offered a position with "Advent" as Senior Director of Advance Technology, based out of the LLC's Livermore, California, site. Chen 2d. Decl., Ex. 1 (Chen Offer Letter) [Doc. No. 30-2]. The offer letter states that Chen would report to "Advent Technologies, LLC's Senior Vice President, Ian Kaye," and is signed by Kaye. Id.

On December 14, 2021, Kaye received his offer letter for a position with "Advent" as Senior Vice President, Product Development, with responsibilities including acting as a general manager of the LLC and overseeing its day-to-day operations. See Kaye 2d Decl., Ex. 1 (Kaye Offer Letter) [Doc. No. 30-1]. The offer letter states that Kaye was to report to Emory De Castro on technical issues related to Kaye's position, and to the managing members of the LLC, Vasilis Gregoriou and James Coffey, on operational and strategic issues. Id.

Vasilis Gregoriou is Advent Inc.'s CEO. Kaye 2d Decl. ¶ 16 [Doc. No. 30-1]. De Castro is the Chief Technology Officer at Advent Inc. De Castro Decl. ¶ 1 [Doc. No. 27-1]. De Castro negotiated Chen's offer letter and had final approval on its terms. Id. ¶ 5. De Castro and others acting on Advent Inc.'s behalf were in Massachusetts when Kaye's offer letter was negotiated. Id. ¶ 4.

Both offer letters contained an "At-Will Employment" clause providing that: "Your employment with the Company will be on an 'at-will' basis under Massachusetts law." Kaye

---

name change of the entity, however, the court understands these payments to have been made by the LLC owned by Advent Holdings and that the legal name of that entity was not updated on the bank account or payroll records following the name change. Plaintiff claims that Defendants were paid by Advent Inc. through a TD Bank account located in Massachusetts. De Castro Decl. ¶ 28 [Doc. No. 27-1] (using "Advent" to refer to "Advent Technologies, Inc."). The court discounts this assertion as unsupported where the record does not provide facts providing a basis for De Castro's claimed personal knowledge or documentation of any such payments.

Offer Letter [Doc. No. 24-1]; Chen Offer Letter [Doc. No. 30-2]. Both Defendants also received Advent Inc.'s Employee Handbook for California Employees around the time they signed the offer letters. Kaye Decl. ¶ 5 [Doc. No. 24-1]; Chen Decl. ¶ 5 [Doc. No. 24-2]. Advent Inc's claims against both Defendants are based in part on the Employee Handbook. Compl. ¶¶ 21, 57, 59–63 [Doc. No. 1-1].

Chen signed an Employee Proprietary Information and Inventions Agreement with Advent Holdings ("Proprietary Information Agreement") that provided that federal and California law governed all matters arising out of or relating to that agreement, and that both Chen and Advent Holdings consented to exclusive personal jurisdiction in the federal and state courts in California, except as to enforcement of judgments or a claim for equitable relief. Chen Decl., Ex. B (Proprietary Information Agreement) [Doc. No. 24-2]. This clause noted that "[f]or the avoidance of doubt, the foregoing terms will control over any conflicting terms in my offer letter." Id. The Proprietary Information Agreement also contained an addendum titled "Limited Exclusion Notification to *Employees in California.*" Id. (emphasis added). Advent Inc.'s claim against Chen is based in part on this Agreement. Compl. ¶ 24–28, 58–62 [Doc. No. 1-1].

5.   Defendants Participate in Team Calls with Advent Inc. Personnel

From California, Defendants regularly communicated with Advent Inc. personnel via Zoom, Teams, phone calls, and emails. De Castro Decl. ¶¶ 7–24 [Doc. No. 27-1]. Both Kaye and Chen had at least bi-weekly Teams meetings with De Castro, a Massachusetts-based employee, during which they discussed Advent Inc.'s business and technology, including aspects of the Honey Badger project. Id. ¶¶ 8, 22. Other Advent Inc. employees from around the globe participated in these bi-weekly Teams meetings. Kaye 2d Decl. ¶ 14 [Doc. No. 30-1]. Chen participated in usually weekly Zoom/Teams "Office of the Chief Technology Officer" group

5

meetings led by De Castro. De Castro Decl. ¶ 22 [Doc. No. 27-1]. Kaye participated in a weekly Site Leads meeting, also chaired by De Castro, "with other site leads across the organization." Id. ¶ 8. De Castro does not specify in what format this weekly meeting occurred. At least one other Massachusetts-based employee, Jeff Baldic, was in "frequent and regular communication" with Kaye and Chen; De Castro "participated in many of these interactions." Id. ¶¶ 10, 23. De Castro also does not specify in what format Defendants conducted meetings with Baldic. Defendants regularly held video calls with engineers based in Greece. Kaye 2d Decl. ¶¶ 14–15 [Doc. No. 30-1].

6. Defendants' Visits to Massachusetts

Kaye visited Massachusetts on at least two occasions to promote Advent's business, including an April 2023 visit to promote the Honey Badger project to the Massachusetts governor and interested investors, De Castro Decl. ¶¶ 10, 23 [Doc. No. 27-1], and to discuss additional technological updates to the Honey Badger project, id. ¶ 18.

Chen has not been in Massachusetts since 2014, when he visited the state for a family vacation. Chen Decl. ¶ 6 [Doc. No. 24-2].

7. Defendants Resign from Advent Inc.

Kaye and Chen met with De Castro and Coffey in the LLC's Livermore, California, office on April 21, 2023, to discuss their separation, intending to give two weeks' notice, but they were informed that that would be their final day of employment. Kaye 2d Decl. ¶ 6 [Doc. No. 30-1]; Chen 2d Decl. ¶ 4 [Doc. No. 30-2].

Kaye and Chen also sent resignation emails to De Castro, see De Castro Decl. ¶¶ 25–26 [Doc. No. 27-1], but the record is unclear as to whether those emails were sent before or after the April 21 meeting.

## II. Standard of Review

The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirements of the United States Constitution. Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 711–12 (1st Cir. 1996); see also Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

Where, as here, the court considers a Rule 12(b)(2) motion without holding an evidentiary hearing, "that court applies the prima facie standard." See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995). To make a prima facie showing of jurisdiction, a plaintiff must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). The court "must accept the plaintiff's (properly documented) evidentiary proffers as true," Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995), but a plaintiff must "go beyond the pleadings" and "provide affirmative proof of their jurisdictional allegations," Boit, 967 F.2d at 675, 681; see Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 123 (1st Cir. 2022) ("Even though a plaintiff need not plead facts that suffice to ground the exercise of in personam jurisdiction, it must—if challenged—ensure that the record contains such facts."). Courts must also consider a defendant's undisputed jurisdictional facts. Generally, courts considering jurisdictional claims are not required to "credit conclusory allegations or draw farfetched inferences." Lin v. TipRanks, Ltd., 19 F.4th 28, 33 (1st Cir. 2019) (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Cossart, 804 F.3d at 18 (quoting Sawtelle, 70 F.3d at 1387). Thus, to establish personal jurisdiction, a plaintiff "must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." Id.

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (citation omitted). Even where a party presents "jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites" of the long-arm statute. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6, 389 N.E.2d 76 (1979). "Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." Lopez v. AngioDynamics, Inc., 2021 WL 5040320, at *4 (D. Mass. Oct. 28, 2021) (quoting SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325, 85 N.E.3d 50 (Mass. 2017)).

The Massachusetts long-arm statute provides in relevant part:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

(b) contracting to supply services or things in this commonwealth;

(c) causing tortious injury by an act or omission in this commonwealth;

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or

engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . .

Mass. Gen. Laws c. 223A, §3.

### III.   Discussion

#### A.   Massachusetts Long-Arm Statute

1. Mass. Gen. Laws c. 223A, § 3(a)

Advent Inc. argues that Defendants transacted business in Massachusetts under subsection (a) by negotiating and forming contracts with a Massachusetts entity, maintaining continuous communications with Massachusetts-based employees, and reaching into the Commonwealth to terminate their employment. Pl.'s Opp. to Defs.' MTD 8–9 [Doc. No. 27].

Defendants argue that they did not negotiate employment contracts with a Massachusetts entity (Advent Inc.) and were employed by the Livermore, California-based Advent LLC; their communications with Massachusetts-based personnel were tangential, non-essential aspects of their jobs; and that they terminated their employment during in-person meetings held in California. See Defs.' Reply 9–11 [Doc. No. 30].

For jurisdiction to exist under section 3(a) of the Massachusetts statute, two requirements must be met: (1) "the defendant must have transacted business in Massachusetts" and (2) "the plaintiff's claim must have arisen from the transaction of business by the defendant." Baskin-Robbins, 825 F.3d at 34 n.3 (quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767, 625 N.E.2d 549 (1994)); see M.G.L. c. 223A, § 3(a).

Subsection (a) of the long-arm statute is not especially demanding. See, e.g., Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 110 (D. Mass. 2003) ("[J]ust a few acts . . . can often suffice to satisfy [subsection (a)]'s threshold for transacting business.");

9

A-Connoisseur Transp. Corp. v. Celebrity Coach, Inc., 742 F. Supp. 39, 42 (D. Mass. 1990) ("[E]ven an isolated, 'one-shot' transaction . . . may constitute transacting business," but the "plaintiff's cause of action must arise from that transaction of business.").

When applying the Massachusetts long-arm statute, this court has found that subsection (a) is satisfied when a defendant engages in direct and indirect communication as part of a developing business relationship with a plaintiff in Massachusetts. See, e.g., The Scuderi Grp., LLC v. LGD Technology, LLC, 575 F. Supp. 2d 312, 319 (D. Mass. 2008) (ongoing professional communications regarding an evolving contractual relationship constituted transacting business in Massachusetts); Workgroup Tech. Corp., 246 F. Supp. 2d at 109–10 (defendant who made multiple calls, faxes, and emails to Massachusetts in negotiating a contract transacted business under subsection (a)); M-R Logistics, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 276 (D. Mass. 2008) ("extensive post-contract communications that relate to the operation of the contract itself" may also qualify as transacting business).

    a.    Contract negotiations

Advent Inc. has failed to introduce evidence that either Defendant negotiated a contract to be employed by a Massachusetts-based corporate entity rather than by the LLC. Kaye and Chen were employed at UltraCell prior to Advent Holdings acquiring the California company; neither Defendant voluntarily initiated contact with any Advent entity prior to that acquisition. Further, the offer letters provided to Kaye and Chen after the acquisition do not specify Advent Inc. as the employing entity—rather, the letters bear a generic Advent logo and refer generally to "the Company." Where the offer letters do reference a specific Advent entity, subsidiary, or holding, that reference is primarily to Advent LLC, the Livermore, California-based company.

    b.    Provision of services in Massachusetts

Even where a defendant "ha[s] an employment agreement with his employer which call[s] for him to supply his services, at least in part, in Massachusetts," there is no personal jurisdiction over that defendant where the operative claims "do not arise from his provision of [those] services in Massachusetts." See Saint-Gobain Ceramics & Plastics, Inc. v. Happy Hewes, 2006 WL 1646141, at *3 (Mass. Super. Ct., May 26, 2006). That is precisely the case here, where it is undisputed that Chen never stepped foot in Massachusetts on behalf of any Advent entity, and where both Defendants worked on defense-based projects, including the Honey Badger project, that were based entirely out of the Advent LLC Livermore, California location.

De Castro avers that an important aspect of both Defendants' jobs was frequent and regular communication with Massachusetts-based employees, De Castro Decl. ¶¶ 11, 23 [Doc. No. 27-1], but fails to acknowledge that the communications by Defendants were made from California and that non-Massachusetts based employees also participated in those same communications, see Kaye 2d Decl. ¶¶ 14–16 [Doc. No. 30-1]; De Castro also avers that Kaye visited Massachusetts twice to advance Advent Inc.'s business, De Castro Decl. ¶¶ 12–20 [Doc. No. 27-1], but does not tie the breach of contract claims to any specific action by Kaye during his two visits to Massachusetts. This evidence is insufficient to tie either Kaye or Chen's contacts with Massachusetts to Advent Inc.'s claims against them, including that either Defendant acquired the specific pictures or documents they allegedly misappropriated via their communications with Massachusetts-based personnel.[2]

---

[2] De Castro avers only that Kaye and Chen "had access to the technology at issue in this litigation" through their Massachusetts interactions. De Castro Decl. ¶¶ 11, 23 [Doc. No. 27-2]. However, the Complaint [Doc. No. 1-1] specifically references three dozen cell phone images of technology, id. ¶¶ 37–39, as well as 94 files including PowerPoint presentations, financial projections, and prototypes, id. ¶¶ 33–34, that Kaye and Chen allegedly took from Advent Inc. De Castro's Declaration does not allege that the Defendants acquired any of that specific

11

c. Employment termination

Finally, Advent Inc. has not shown that either Kaye or Chen terminated their employment contracts by "reaching into" Massachusetts. Both Kaye and Chen aver that they resigned during in-person meetings held in Livermore, California with De Castro and Coffey in attendance. De Castro avers that Kaye and Chen also sent him resignation letters via email; the record is silent as to whether those emails were sent before or after the in-person meeting and there is no evidence that either Kaye or Chen sent those emails from Massachusetts. Even if Advent Inc. had so shown, that evidence standing alone would be insufficient to support the exercise of personal jurisdiction under subsection (a) of the long-arm statute.

Accordingly, Advent Inc. has not sufficiently demonstrated that the Defendants transacted business in Massachusetts.

2. Mass. Gen. Laws ch. 223A, § 3(c)

Subsection 3(c) is met when intentional tortious misconduct (but not negligent conduct) results in an injury in Massachusetts. See e.g., Burtner v. Burnham, 13 Mass. App. Ct. 158, 430 N.E.2d 1233 (Mass. App. Ct. 1982) (finding personal jurisdiction over real estate agent, a New Hampshire resident, under G.L. c. 223A, § 3(c), where agent knowingly misrepresented size of parcel, and Massachusetts plaintiffs relied upon misrepresentation). The tortious misconduct may occur out-of-state. See, e.g. Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986) (fraudulent representations made by out-of-state defendant to Massachusetts company satisfied subsection (c)).

---

information as a result of their contacts with Massachusetts, as opposed to their work in California and their much more extensive contacts with California- or Greece-based Advent employees.

Defendants assert that subsection (c) is not met where their alleged misconduct did not occur in Massachusetts, Defs.' Mem. ISO MTD 7 [Doc. No. 24], and was limited to only California-based projects and interactions with the California entity Advent LLC. Defs.' Reply 5–8 [Doc. No. 30].

Advent Inc. argues that Defendants committed intentional torts—misappropriation of trade secrets and conversion—and that Advent Inc. feels that injury in Massachusetts, thus satisfying subsection (c). Pl.'s Opp. to Defs.' MTD 11 [Doc. No. 27]. Advent Inc. relies on KPM Analytics for the proposition that a nonresident defendant's out-of-state conduct can confer jurisdiction where the plaintiff's in-forum injury was clearly related to that conduct. Id. at 12 (citing KPM Analytics North Am. Corp. v. Blue Sun Scientific, LLC, 2021 WL 2982866 (D. Mass. July 15, 2021)). Advent Inc. also alleges that Defendants knew they were employed by a Massachusetts company and that any resulting injury would be felt in Massachusetts, Pl.'s Opp. to Defs.' MTD 12 [Doc. No. 27].

In KPM Analytics, the court found that subsection (c) of the long-arm statute was satisfied when the plaintiff, a Massachusetts company, alleged that an out-of-state corporate defendant stole the plaintiff's trade secrets by using the Massachusetts company's own employees and had therefore "knowingly participated in intentional misconduct directed at a Massachusetts company." KPM Analytics, 2021 WL 2982866, at *8. Here, unlike in KPM Analytics, there is no evidence that Defendants misappropriated information belonging to or generated by a *Massachusetts* company (Advent Inc.) rather than a California company (Advent LLC). See id. at *6–*8. As discussed above, Defendants allegedly took actions such as transferring Advent's confidential files to their own devices for the purpose of supporting a competitor entity, Compl. ¶¶ 30–41 [Doc. No. 1-1], but the record does not suggest that the

13

conduct occurred in Massachusetts or with the assistance of Massachusetts accomplices: rather, the evidence suggests that the information relevant to the Honey Badger project was generated at the Advent LLC location and stored on servers located in Livermore, California. Advent Inc. has therefore failed to establish personal jurisdiction under subsection (c).

       3. Mass. Gen. Laws ch. 223A, § 3(d)

"The threshold requirement of § 3(d) is that the defendants' out-of-state act caused the plaintiff's in-state harm." Barnes v. Merck & Co., Inc., 648 F. Supp. 3d 283, 289 (D. Mass. 2023) (citing Merced v. JLG Indus., Inc., 170 F. Supp. 2d 65, 71 (D. Mass. 2001)). Plaintiff must also "satisfy one of the three disjunctive prongs of the second requirement of § 3(d): (1) engaging or soliciting business in Massachusetts, (2) engaging in any other persistent course of conduct in Massachusetts, or (3) deriving substantial revenue from goods used or consumed [or services rendered] in Massachusetts." Id. at 290 (citing M.G.L. c. 223A, § 3(d)).

Defendants concede that Advent Inc.'s allegations satisfy the threshold requirement. Def. Mem. ISO MTD 7 [Doc. No. 24]. Action taken by out-of-state defendants, the alleged misuse of confidential information, is the proximate cause of Advent Inc.'s alleged injury in Massachusetts. However, Advent Inc. has not satisfied the second step of the analysis where Advent Inc. alleges that Defendants' only contacts with Massachusetts were the result of "providing services incident to [their] employment, presumably at the behest of [their] employer." See Saint-Gobain, 2006 WL 1646141, at *3; see also Pl.'s Opp. to Defs.' MTD 14-15 [Doc. No. 27].

B.     *Constitutional Due Process*

Even if Defendants were subject to the long-arm statute, Plaintiffs have not shown that Defendants purposefully availed themselves of Massachusetts such that the due process requirements for exercising personal jurisdiction are satisfied.

1. General Jurisdiction

"General jurisdiction broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.'" Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011).

Defendants are California residents. Accordingly, general jurisdiction may not be exercised over Defendants in Massachusetts.

2. Specific Jurisdiction

"Specific personal jurisdiction . . . may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" Warren Envtl., Inc. v. Source One Envtl., Ltd., 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). "The three elements of specific jurisdiction are relatedness (the nexus of plaintiff's claim with the defendant's contact with the forum), purposeful availment (something more than an isolated contact or the unilateral activity of a third person), and the reasonableness of the exercise of jurisdiction (the five Gestalt factors)." Id. (citing Baskin-Robbins, 825 F.3d at 35). "Questions of specific jurisdiction are always tied to the particular

claims asserted" and thus the inquiry must be conducted "on a claim-by-claim basis." See Phillips Exeter Acad., 196 F.3d at 289.

"As the First Circuit has stated, the relatedness requirement—'that a suit arise out of, or be related to' [the d]efendant's forum activities—'ensures that the element of causation remains in the forefront.'" Back Bay Farm, LLC. v. Collucio, 230 F. Supp. 2d 176, 186 (D. Mass. 2002) (quoting Ticketmaster, 26 F.3d at 206, 207). "Relatively speaking, the relatedness inquiry is to be resolved under 'a flexible, relaxed standard.'" Baskin-Robbins, 825 F.3d at 35 (quoting Pritzker, 42 F.3d at 61).

"[T]here is a natural blurring of the relatedness and purposeful availment inquiries in cases [] in which the alleged contacts are less tangible than physical presence; in such circumstances, an inquiring court must determine the extent to which the defendant directed an out-of-state activity at the forum state in order to ascertain whether the activity can be termed a contact at all." Phillips Exeter Acad., 196 F.3d at 289. "This determination bears at least a family resemblance to a determination of whether a defendant purposefully availed himself of the protections of the forum state. Notwithstanding this resemblance, however, the inquiries are different . . . ." Id.

"The purposeful availment test focuses on the defendant's intentionality and is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Cossaboon, 600 F.3d at 32 (internal quotation marks and citation omitted). Under the third and final requirement, the exercise of jurisdiction must be "reasonable under the circumstances." Id. (citation omitted).

Advent Inc. emphasizes several facts to justify personal jurisdiction over Defendants. First, Advent Inc. states that Defendants "reached into" Massachusetts to establish their employment contracts with Advent Inc., a Massachusetts company, where Advent Inc. personnel negotiated Defendants' contracts from Boston, Massachusetts, De Castro Decl. ¶¶ 4-6 [Doc. No. 27-1], and the contracts contain an "At-Will Employment" provision stating that Defendants' "employment with the Company will be on an 'at will basis' under Massachusetts law," Kaye Offer Letter [Doc. No. 30-1]; Chen Offer Letter [Doc. No. 30-2]. Second, Advent Inc. states that Defendants maintained frequent and recurring contacts with Massachusetts-based personnel that were essential aspects of Defendants' jobs. De Castro Decl. ¶¶ 7–14; 21–24 [Doc. No. 27-1]. Defendant Kaye visited Massachusetts twice to perform functions of his job, including giving a presentation to Massachusetts politicians and investors about the technology that Kaye and Chen later misappropriated. Id. ¶¶ 12–17.[3]

    d.  Purposeful Availment

"'[T]he two cornerstones of purposeful availment' are 'voluntariness' and 'foreseeability.'" PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 19–20 (1st Cir. 2019) (quoting Ticketmaster, 26 F.3d at 207). "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself*.'" Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (quoting Burger King Corp. v.

---

[3] Advent Inc. also states that Defendants were paid through a Massachusetts bank account and "reached into" Massachusetts to resign, id. ¶ 28, but those assertions are unsupported. As discussed above, Advent Inc. has not made a sufficient showing that Defendants were paid from Massachusetts. See supra n. 1. On the resignation, Defendants' statements that they met with De Castro and Coffey in California to discuss their resignation and were informed that would be their final day of employment are not rebutted. That they also sent a resignation email to De Castro either before or after that meeting does not show that they "reached into" Massachusetts to resign.

Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original)). Additionally, "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Generally, the requisite contact cannot stem from a plaintiff's "unilateral activity," see id. at 298, but the application of the rule prohibiting a plaintiff's unilateral activity from establishing the requisite foreseeable connection between the defendant and the forum "will vary with the quality and nature of the defendant's activity," Burger King, 471 U.S. at 475. Advent Inc. has not sufficiently shown that Defendants purposeful availed themselves of Massachusetts.

In Phillips, the First Circuit found that voluntariness was not satisfied when an out-of-state defendant company signed an employment contract with a Massachusetts doctor. 530 F.3d at 28. The court reasoned that although the defendant knew the plaintiff was a Massachusetts resident and mailed an unsigned employment contract to the plaintiff in Massachusetts, "the defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over the defendant." Id. Here, Defendants were employed by UltraCell, a California-based company, that was acquired by Advent Holdings. Several months after the acquisition, UltraCell changed its name to Advent LLC, but remained based in California as a wholly owned subsidiary of Advent Holdings. It was only after this name change that Defendants were offered employment, and those offer letters do not name Advent Inc. itself as a party to the agreement. Kaye Offer Letter [Doc. No. 30-1]; Chen Offer Letter [Doc. No. 30-2].

Chen's Offer Letter expressly stated that he would be "based out of Advent Technologies, LLC's Livermore, CA site," was signed by Kaye, not any Massachusetts-based executive, and required Chen to report to Kaye. Chen Offer Letter [Doc. No. 30-2]. The court

finds that on these facts, Chen did not purposefully avail himself of Massachusetts merely by signing a contract with Advent. See Korngold v. DRB Sys. LLC, 2023 WL 2465797, at *5 (D. Mass. Mar. 10, 2023) ("Defendants did not deliberately target their behavior to Massachusetts by accepting employment from DRB, an Ohio based company with staff scattered across different states. . . .").

However, Kaye's Offer Letter was signed by De Castro, a Boston-based Advent executive, and did not limit Kaye's employment responsibilities to the Livermore, CA location; indeed, Kaye was appointed Senior Vice President of Advent Inc., and was required to report to De Castro on technical issues related to Kaye's position. See Kaye Offer Letter [Doc. No. 30-1]. Therefore, Kaye, unlike Chen, may be said to have purposefully availed himself of Massachusetts by signing his employment contract. See Adelson v. Hananel, 510 F.3d 43, 51 (1st Cir. 2007) (where defendant oversaw a foreign office but nonetheless "knowingly affiliated himself with a corporate entity which was based primarily in Needham, Massachusetts . . . the possibility of a suit there was amply foreseeable").

e. Relatedness

"[R]elatedness is the divining rod that separates specific jurisdiction cases from general jurisdiction cases. . . . [I]t ensures that the element of causation remains in the forefront of the due process investigation." Ticketmaster, 26 F.3d at 207. For tort claims, courts "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter Acad., 196 F.3d at 289. For breach of contract claims, the court asks "whether the defendants' activity in the forum state was 'instrumental either in the formation of the contract or its breach.'" Adelson, 510 F.3d at 49 (quoting Phillips Exeter Acad., 196 F.3d at 289).

Here, as discussed above, Advent Inc. has not proffered facts sufficient to establish that either Kaye's or Chen's conduct in Massachusetts (the "conduct" in question primarily being sending emails and participating in video calls) gave rise to Advent Inc.'s claims against those Defendants. See Vapotherm, Inc. v. Santiago, 38 F.4th 252, 260 (1st Cir. 2022) (affirming dismissal based on lack of personal jurisdiction where injury was not a result of the contract, no evidence was submitted that the contract was "negotiated or discussed" in New Hampshire, and the defendant was "not subject to substantial control or ongoing connection in New Hampshire"). Therefore, Advent Inc. has failed to establish specific personal jurisdiction over either Defendant.

## IV.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 23] is GRANTED.

IT IS SO ORDERED

April 29, 2024                                                                 /s/ Indira Talwani
                                                                               United States District Judge